Judge Traxler, may it please the Court. The question in this case is whether the Board of Immigration Appeals erred in upholding the determination of the immigration judge that the petitioner did not marry her former husband in good faith. We asked the Court to remand or reverse for two distinct reasons. First, the Board applied the wrong standard of review in assessing whether the petitioner entered the marriage in good faith. Whereas the Board improperly treated the issue as a pure question of fact subject to clear air review, it should have treated it as a mixed question whose ultimate conclusion is subject to de novo review. Second, even assuming that the Board applied the correct standard of review, the Board's decision is not supported by substantial evidence. The I.J. arbitrarily disregarded the testimony of four credible witnesses who maintained that my client did enter the marriage in good faith, and the adverse credibility finding against my client rested on nonexistent or minor inconsistencies that had nothing to do with her intent in entering the marriage. And with respect to the jurisdictional question, the government is wrong to suggest that the Court cannot review the Board's good faith marriage determination because the jurisdictional bar only applies to the prior determination made by the Department of Homeland Security, not the subsequent determination which is now before the Court made by the I.J. and the Board. Now, with respect to our first argument, whether the Board applied the wrong standard of review is a question of law which I think is plain this Court has jurisdiction to consider, but I would like to emphasize that the Court need not actually reach whether the Board applied the wrong standard of review. All the Court needs to do to resolve this case is remand the record to the Board to explain why it applied clear air review. It is a fundamental principle of administrative law that reviewing courts can only affirm an agency based on the reasoning provided by the agency itself. In the decision below, the Board never explained why it regarded the good faith marriage determination as a question of fact subject to clear air review. It simply stated, and this is on page four of the record, that whether a marriage was entered into good faith is a factual question subject to clear air review. And in support of that proposition, the only thing it cited was a regulation that says questions of fact are subject to clear air review. So you... I've never seen that type of remand before, a remand for that purpose. I'm not saying that you can't, I'm just not familiar with it. Do you have some cases where that type of remand has occurred? Well, we cite in our brief many where the Court remands the case, maybe not on the issue wasn't simply the standard of review, but where the Board simply didn't provide a sufficient explanation for why it acted as it did. I've never heard of one where you just say, explain to me why you applied this law. Well, I think it results from, you know, both the Chenery principle and the ordinary remand rule, where if an agency hasn't addressed an issue in the first instance, it should get the first bite at the apple to do so. And as we know in our brief, the Board, I think a remand would be appropriate because the Board has applied de novo review to the same question in many other cases. We cite six such examples in our brief, and in the 28J letter that we filed earlier this month, we provide a case in which the same Board member who applied clear air review in this case applied de novo review in another case. So now the Board, of course, this Court, pardon me, of course could reach the question, but we just think it doesn't need to reach the question because it could give the Board an opportunity to answer it, explain the first instance. Now if the Court does elect to reach the standard of review question, we ask that it hold that whether an alien entered a marriage in good faith is a mixed question of law and fact over which the Board should apply a hybrid or bifurcated standard of review. Specifically, the Court should hold that the Board should review the underlying factual findings for clear air and the ultimate determination of whether an alien entered a marriage in good faith de novo. Now the Government has, perhaps unwittingly, conceded this issue in its brief. On page 25, the Government says that the Board would have been required to apply de novo review if it found that the petitioner was, quote, statutorily ineligible for a hardship waiver because she failed to meet her burden. What the Government argues is that the Board was correct to apply clear air review because in the Government's view, the sole basis for the IJ's determination was his finding that the petitioner, my client, did not testify credibly. But that is simply not an accurate reflection of what the immigration judge held. Yes? You're talking about your colleague's concession. I just want to make sure I understand. So are you conceding that if this case were, in fact, totally driven by a credibility determination, then clear air would be the right standard of review? I suppose, yes. If the only issue, well, yes and no. If the only issue was credibility, yes, that is a question of fact. However, this Court has held in a number of cases that an IJ can't deny a claim solely on the basis of an adverse credibility finding. It has to then look at independent evidence. So if that's all the IJ did in this case, that would be reversible error on its own right. So the IJ's decision begins on page 56 of the record. On pages 63 and 64, the decision contains a standalone section on credibility that addresses the credibility of the petitioner and all the witnesses who testify in the case. Then beginning on page 65, the IJ begins a new section entitled Bonafide Marriage, which she begins by stating the Court finds that respondent has not demonstrated that her marriage was entered into in good faith. Rather, the respondent's testimony coupled with the evidence submitted illustrate that she married for the purpose of evading the immigration laws. And finally, on page 70 of the record, the IJ concluded his opinion by saying the Court finds, based on the totality of the evidence, that respondent has not met her burden. And indeed, the government itself acknowledges the IJ's decision was not simply based on the adverse credibility finding when it says, starting on the bottom of page 12, quote, based on the totality of the evidence before him, the IJ concluded that the petitioner had not met her burden of establishing that she qualified for a waiver. So I don't know if the government intends to continue to press this argument, but our position is that the government has effectively conceded it in its brief. Now, the government's concession aside, yes, Your Honor? I just want to make sure I'm remembering the record. I'm sorry, I don't have it in front of me. But did the petitioner challenge anything but the credibility determinations before the BIA? I thought I remembered. I take what you're saying about the nature of the decisions, but the actual petition for review, wasn't it devoted exclusively to the credibility determination? No, the appeal to the board? No, the my client challenged both the adverse credibility finding and the overall determination. I believe it was I don't remember the pages of the record. I believe it was pages 15 to 17 of the administrative appeal brief. And we do provide those sites in the reply brief. But but those issues were preserved below. Now, the government's concession aside, the Supreme Court has described a mixed question of law and fact as one in which the historical facts are admitted or established. The rule of law is undisputed. And the issue is whether the facts satisfy the statutory standard. Here, good faith is a statutory standard set forth in the text of the INA. Thus, once the board determines that an IJ's factual findings are not clearly erroneous, the ultimate conclusion of whether an alien did or did not enter the marriage in good faith is a legal determination for which the board should apply to NOVA review. Now, we acknowledge that whether an alien entered a marriage in good faith is a fact bound determination, but that does not make the determination itself a question of fact. The commentary in the federal register that accompanied the regulations at issue make clear that the board should only apply clear air review to pure questions of fact that do not require the exercise of any legal judgment. So, for example, the commentary said that in asylum cases, what actually happened to the applicant in his home country is a is a finding of fact, subject to clear air review. But whether that mistreatment rises to the level of persecution is a legal question subject to NOVA review. Likewise, in cases for cancellation of removal, whether an alien actually has qualifying relative to the United States is a factual question subject to clear air review. But whether that relative would suffer exceptional and extremely unusual hardship in the event of removal is a legal determination subject to NOVA review. Now, in practice, the board often applies to NOVA review to determinations that that seem highly factual. For example, the board applies to NOVA review to the question of whether an asylum applicant was, quote, firmly resettled in a third country prior to entering the United States. The board also applies to NOVA review in determining whether two or more crimes were part of a single scheme of criminal misconduct and in determining whether an alien possessed a small amount of marijuana. So simply because good faith marriage determinations are fact bound does not mean that they are themselves factual findings for purposes of the board's standard of review. Now, but my final point with respect to this argument is that if the court finds that the board should have applied to NOVA review, the proper remedy is to remand the case so that the board can apply the correct standard of review. That was the remedy that this court ordered in Turkson versus Holder, where the court found that the board applied an incorrect standard of review and determining whether the petitioner was eligible for relief under the Convention Against Torture. And that is the remedy required under the ordinary remand rule, which we were discussing earlier, which is holds that when an agency has not considered the issue, the proper course is to give an agency the opportunity to consider that issue in the first instance. If the court has no questions or further questions regarding the first argument, our second argument is that even assuming a good faith marriage determination is a question of fact, the agency's determination here is not supported by substantial evidence. Now, the government argues that this court lacks jurisdiction to reach that question. But a close reading of the statute shows that is not the case. In 8 U.S.C. 1252 A2B, Congress provided that no court shall have jurisdiction to consider, quote, any decision of the attorney general or the secretary of Homeland Security, the authority for which is specified under the subchapter to be in the discretion of the of the attorney general or the secretary of Homeland Security. So while the statute references both the attorney general and the secretary of Homeland Security, the statute requires an alignment between the official who makes the determination and the statute committing the determination to that official discretion. So, for example, a statute committing a determination to the discretion of the secretary of Homeland Security would not bar this court from reviewing the same determination made by the attorney general. And that is precisely what we have in this case. Yes. Just conceptually, I'm wrestling with this a little bit. I understood the purpose of this jurisdiction stripping provision to be kind of dividing the world between what courts can do and what the executive branch can do. Not so much a concern about how the executive branch is dividing up, you know, is doing its division of labor. What matters is the courts are not supposed to get involved in that. So I guess I'm not clear on why it should matter quite so much which part of the executive branch is involved at which stage. Well, because first jurisdictional statute should be construed narrowly. And here, the assignment of discretion is solely to the Department of Homeland Security. So by way of background, both DHS and the Justice Department have a role to play in determining a good faith marriage waiver. First, an alien has to apply to DHS. If DHS denies the waiver, then they get a de novo review before the immigration judge and the Board of Immigration Appeals, which are both, which are both, of course, delegates of the attorney general. So here, by its terms, the statute only precludes courts from reviewing the initial determination of the Department of Homeland Security. You can't have any, right? There is no review from that. So in this context, you would say the provision is meaningless. Not necessarily. There could be review. How could it come up directly from DHS to us? Because, for example, if an alien held an independent legal status and then applied and then married a U.S. citizen and went to DHS to seek a waiver and the waiver was denied, well, that person wouldn't be removable because they have independent legal status. So there would be no need to put them in removal proceedings. So the proceedings, the statute wouldn't be, it wouldn't be rendered nugatory. But there is no indication. This language was inserted in the Violence Against Women Act, the Reauthorization Act of 2013. There is no legislative history that I can find about why Congress replaced the reference to the attorney general with Secretary of Homeland Security. But it seems unlikely that in a statute designed to reauthorize the Violence Against Women Act, Congress would strip federal courts of jurisdiction to review what was intending to restrict courts review of good faith marriage waivers. So we think the statute, has that answered your question, Your Honor? Probably. Okay. I mean, we believe the statute is clear on its face, but to the extent the court finds it ambiguous whether the jurisdictional bar applies, it should apply the longstanding presumption in favor of judicial review of administrative action. Now, if the court finds that it does have jurisdiction, the final question is whether any reasonable adjudicator would have been compelled to conclude that the petitioner satisfied her burden of demonstrating that she entered the marriage in good faith. Now, when answering this question, it's important to remember that the burden on the petitioner was simply preponderance of the evidence. So what the court must decide is whether any reasonable adjudicator would have found it more likely than not that the petitioner entered the marriage in good faith. Now, taking all the evidence and testimony into account, we believe no reasonable adjudicator could have found that the petitioner failed to satisfy her burden. If you look at the strongest parts of the petitioner's case, they far outweigh the alleged inconsistencies and the purported lack of documentary evidence. First, this is a case where four separate witnesses, each of whom the I.J. found to be credible, testified that my client entered the marriage in good faith. Her sister testified that the client, my client was brought to tears by the marital difficulties. Her brother-in-law testified that my client was devastated when he found out that her husband cheated on her. And a coworker testified that he socialized with them as a couple. And my client's former husband himself repeatedly testified that he did not believe my client married him for immigration purposes. I see my time is up, so I'll reserve the remainder for rebuttal. Okay. Thank you. Let's hear from the government. Good morning, Your Honors. Arthur Rabin for the government. May it please the court. Just to take up that last point, the standard review here is not whether or not petitioner met his burden. The standard of review under 8 U.S.C. 1252 is whether any reasonable fact finder would be compelled to find that the petitioners, that the agency's fact finding was, you know, it was compelled whether it was otherwise. So the burden here is for the government to show their substantial evidence to support what the agency found and whether or not there's any compelling evidence to overturn that. Now. Well, I thought your principal argument is that we don't even get to that. Right. And that's, I just want to touch back on, on just that last point that he made. And then I just, the overarching issue here is jurisdiction. Now, counsel is correct. The 1252 has a provision that says this court lacks jurisdiction over any discretionary matters. And if we look at the actual provision that governs whether or not a waiver is that provision specifically says that it is, and that the court lacks jurisdiction to review a decision of the Secretary of Homeland Security, that change was made in 2014. It used to say attorney general and Homeland Security. So why would Congress change that? Well, we would submit in accordance with the, the regulatory provision here, which is 8 CFR 1216.5 F is specifically tell us petitioner that when DHS disapproves or denies her waiver to the joint marriage petition, she can seek review from in removal proceedings. So this is not like she can reapply. She is seeking actual review. So we have to read this as a process that is Congress recognized that you know, the, the initial denied, the actual decision to deny it was made by an agent of the reviewed by the immigration judge. Uh, and, and then that decision is reviewed by the board. So that's the PR the process here. So ultimately the government's argument is this. When the court is looking at whether or not his jurisdiction, um, is specifically has to read, you know, the, the, this, the, the change obviously, you know, we're making like a utility argument. Um, this change had to have taken place for a reason. And the reason we would submit is that Congress did it to recognize that the denial was made by an agent of the secretary of Homeland security, and then reviewed by agents of DOJ, which is the immigration judge and the board. Um, but you know, the, this court does have jurisdiction to review legal issues nonetheless, and he has a petitioner, uh, Ms. And that legal issue is did the board use the proper standard of review in this case? We would submit the board did. The reason for that is if you actually look at the immigration judge's decision, it was overwhelmingly an adverse credibility decision, despite the fact that counsel says, well, look, there was an adverse credibility section and there was a good faith marriage section. If you actually examine the good faith marriage section in the immigration judge's decision, you will note the judge goes on and on and on through the myriad discrepancies, the problems in the testimony, the suspect issues, the implausibilities, the omissions. Um, so this isn't like where, uh, the 28 J letter case where it's, it's the Rhodes case where there were, uh, admittedly the board said, look, um, there's a legal issue and then there was a, uh, a non-legal issue, clearly erroneous adverse credibility issue. The reason the board did that is because in that particular case, in contrast to this one, the petitioner in that case specifically said, we don't contest the facts. Let me stop because I totally understand what you're saying. This is my concern. Um, I, as I understand it, your argument is like the IJ decision is driven by credibility issues. I finally did find the review, the brief on review, which, you know, opens and closes by saying this, the credibility determination is wrong. We ask that you reverse the credibility determination. And so clearly erroneous review applies. But my concern is that's not what the BIA said. The BIA didn't say we're applying clearly erroneous review in this case, because this case is about credibility. So are we allowed to read that rationale into what the BIA did and affirm on a or should we send this back and ask the BIA, we don't know, is this what you were thinking? Were you thinking something else? You do different things in different cases. It seems like maybe they could be reconciled, but you haven't reconciled them. Oh, uh, judge Harris. Yes. Uh, I, I would submit the board, um, doesn't have to explain because the board's reasoning is clear on its face, given that, um, the entirety of the immigration judge's decision was adverse credibility. The appeal was adverse credibility. And the board's decision makes clear that it's addressing adverse credibility. And because the board's scope of review provision in 8 CFR, uh, 1,001 point, uh, I would want to say three C, um, specifically says adverse credibility questions will be addressed, will be reviewed strictly under an erroneous, uh, clearly erroneous standard. The board was only doing what its own scope of review provision. The regulation says, let me ask you this. I'm looking at page 65, which is in the IJ's written decision. At the top under first sentence after bonafide marriage says second sentence is rather respondents testimony coupled with the evidence submitted illustrated she married for the purpose. That makes me think he's looking at more than credibility. Well, I mean, your honor, he, he'd done later on that decision. So also says, uh, he, he looked at uncontested facts, uh, and those were the length of the marriage, which was admittedly very short, uh, the length of their, uh, you know, he, he went to Thailand for a week and get engaged. Uh, you know, the, he looked at the amount of emails being sent, uh, between the parties and, and saw that primarily it was Mr. Gonzalez, the former husband that was sending all the emails. You're saying by that, he means uncontested. Uncontested facts in the case that show that, you know, the plausibility of this marriage. Um, you know, and he even then goes through it and does say, you know, these things are suspect. They make me question, uh, the, her veracity when she says he's saying this evidence illustrates that she married for the purpose of evading the marriage law. So uncontested facts, I'm not sure would prove what he says. This evidence is being used to prove or that he's being weighing in order to decide. Well, your honor, I mean, this is so mixed up at this point that, you know, you, I think we all agree with that. Yeah. I mean, at this point, uh, I think, uh, the adverse credibility is the overriding reason for the immigration judge's decision. He does throw some sentences in there about, you know, uncontested facts and, you know, whether or not she met, you know, uh, you know, whether or not she's evading immigration laws in the United States. Um, but in, in the end, all these things, the reason for the denial was adverse credibility. It wasn't that here we have these, uh, settled or established facts and these settled or established facts do not meet the standard for demonstrating a good faith marriage. Um, that is not what we have here. We have a myriad of discrepancy. I mean, the judge's decision goes on and on and on and on about the problems in her credibility. And yes, although the judge did find, uh, some of the witnesses, uh, he also said he found them suspect. That is, you know, her sister obviously has a bias. Her, uh, you know, the brother-in-law had a bias to testify. Her friends who testified had a bias. So the judge didn't just say, well, you know, the, the sister testified it was a great marriage or the brother-in-law testified it was a valid marriage. So I should believe them. He said, well, obviously they have a stake in this fight. So they want her to win. Uh, the judge recognized their bias and he, he specifically stated, I give them a lesser weight to their evidence. Um, so at this point, uh, I'd like to move on to a different issue. Um, if the court does find that it can reach the adverse credibility issue, whether or not the, the, uh, substantial evidence supports the adverse credibility determination in this case. And, you know, this court in our brief, I cited a case, uh, specifically said that, you know, even if there are some adverse credibility, uh, discrepancies that were explainable, or maybe, um, uh, you know, there were problematic, well, as long as the court finds the one or two, um, that do stand up under substantial evidence standard and the evidence does not compel reversal, uh, that adverse credibility determination stands. And, uh, you know, the ones that I pointed out should stand in my brief, I pointed out that, um, you know, between the parties, one of the key issues was why did they break up? Why did she leave him? Because in the end, you know, this, this marriage was only for about a couple of months and, uh, she actually left him about a week after he filed an a petition to remove conditions on her status. So after he did his legal duty, she left him. Why did she do that? Well, initially when she claimed to the agency, the DHS, it was because of, uh, there were some Russian girls living in the house. She felt uncomfortable. There was no privacy, things like that. She never once mentioned adultery. Adultery. Turns out that when she testified about specifically why she left, she said he cheated on me. That's why I left, but that is not even mentioned in her prior sworn statement as to why she left. These are key discrepancies, your honors, about why this marriage was terminated. And he testified in fact, that the timing was completely off. He said that he cheated on her after he admitted he cheated, but after she left him, she said it was before, and there was some confusion with the witnesses, but at least one of the witnesses said, uh, I think it was the brother-in-law that said it was after that he, he caught him in the act, uh, after, uh, Ms. Hupacho left him, Mr. Gonzalez. Key discrepancy. And, you know, counsel might say, well, maybe that's not material. I don't know why, but materiality is not the standard here. This is a post real ID act case. And in post real ID act, the discrepancies no longer have to go to the heart of the claim. As long as under the totality of the circumstances, uh, this, this, uh, shows that she's not credible. The court should sustain that finding. Now, another reason, uh, she, Mr. Hupacho claimed in her written statement that she had tried to reconcile with Mr. Gonzalez. She tried to make up with him while in her testimony, she made it clear that she never tried to quote, save her marriage in any way. Well, that's a clear discrepancy there. You know, if you are attempting to save your marriage, you just flew from Thailand just a couple of months ago to marry this man. And he had asked you to travel with him and you decided, well, I don't want to travel. And that's the reason why you didn't want to stay married to him. Why did you not say that you wanted to save the marriage in any way? Uh, but she clearly testified. I did not try to save the marriage in any way. Uh, there's also some, some testimony about how much money, uh, you know, the, this, this man sent her, uh, Miss Gonzalez, uh, told DHS that he only sent her money for her birthday and for, uh, you know, to, to file the application fee because it was, she was asked like, you know, do you send any money? What did he send you money for? And that's all she mentioned. Well, when, uh, in fact, she was shown that he was sending, Mr. Gonzalez testified, he was sending her between a thousand to $1,500 every month. And there's a money grams to prove that. Uh, and at one point, you know, he spent, you know, thousands of dollars to, uh, for her surgery. Uh, so clear discrepancy there. So why would she, uh, not mention that, you know, this is a clear, uh, statement of her saying, well, he only sent me money for my birthday and he only sent me money as if he wasn't buying me. When in fact, the evidence shows he was sending her thousands of dollars or he in fact gave her an ATM card to use, uh, whenever she, to his bank account. Um, so, you know, again, a clear discrepancy. Now the IJ also found a bunch of other things that were implausible. Like the couple only had a one week courtship in Thailand before they, uh, they got married, uh, or engaged, um, that no witnesses, including her sister and brother-in-law who lived right there. Uh, they said, you know, within very closely proximity, never showed up to witness the wedding. Nobody came to the wedding. There's no pictures of the wedding. Um, you know, that, that, that is kind of suspect. Uh, they were only married for three short months. There's no evidence of corroboration that is, you know, to shore up her credibility. She could have rehabilitated herself and said, well, you know, this was a valid marriage because look, he put me on his, uh, he owned a house. He put me, uh, and he owned a company. He put me on the documentation for his hat on the deed. Uh, he put me on, you know, his insurance claim, uh, you know, for life insurance. Uh, he, we had joint bank accounts, you know, all the indicia that you would think would reasonably corroborate, um, whether or not this was a good faith marriage and, you know, try and rehabilitate her credibility, none of that was existent in this case. So the immigration judge properly found all of this suspect. And, uh, you know, it's just at this point, um, under this standard of review, we believe there's substantial, uh, evidence to support the adverse credibility finding and nothing in the record, especially counsel's assertions in his brief, uh, post facto explanations of counsel are not evidence. And many of those explanations like, uh, you know, counsel, one of the things he mentioned is, uh, there were, there may have been translation issues. Well, none of that was addressed to the board. So none of those issues are exhausted before the agencies, uh, those, those arguments, those assertions of counsel. Uh, so the court shouldn't consider those. Um, so based on, we would submit based on the, the clear discrepancies in the record, there are many of them, the implausibilities of the circumstances of how these people met and married, how they broke up, uh, we would submit the adverse credibility determination should stand. Um, finally, uh, just two quick issues. Uh, although I think counsel in his reply brief walked some of these back, uh, we, we believe that, uh, counsel was raising an IJ bias case in, in, in Clinton's asking for the court to remand to a completely different immigration judge because there were, he thought that our immigration judge here was somehow old fashioned or prejudiced against Ms. Upacha. Um, again, that is not exhausted, never raised before the agency. And then another thing, uh, counsel, uh, in the back of his brief, uh, submitted, uh, an exhibit, um, I don't know if a demonstrative exhibit, I guess, but that also was never in the record. And this, the eight USC 1252 specifically says the court can only consider what is in the certified administrative record. Subject to the court's questions that completes my argument. Thank you. Thank you. Reply. Uh, thank you, your honors, uh, returning to, uh, the merits. Um, as I was saying, the immigration judge found each of the other four witnesses to be credible. And each of those witnesses testified that my client entered the marriage in good faith. The only way the IJ got around their testimony was by giving it limited weight by claiming that each of the witnesses, uh, was biased or self interested. Well, to begin with, I think that's quite arbitrary and capricious because who besides an alien's, uh, family members and friends would be willing and able to go into immigration court to confirm the bona fides of the marriage. But in any event, her former husband wasn't biased or self-interested or self-interested in favor of my client, nor was my former husband's coworker, uh, who, who, who also testified on my client's behalf. Um, now I'm glad the government raised the issue of the timing of when my client, uh, filed for divorce, because that actually cuts heavily in our favor. Now, the IJ said it was suspect that my client filed for divorce soon after the couple filed their green card application. In reality, what's important is not that she filed for divorce after the application was filed, but that she filed for divorce before the application was approved by doing so. She took a very serious risk that either her husband would simply withdraw the petition or that it would be denied if the divorce became final before it was approved. Um, and more importantly, if my client had entered the marriage solely for immigration purposes, she wouldn't have cared that her former husband wasn't faithful or at a minimum, she would have waited until the green card was approved before filing for divorce. So the IJ's finding is simply incompatible with how an alien who did not enter a marriage in good faith would act after learning that their spouse had been unfaithful. Now, uh, in addition to overlooking evidence, uh, that my client did enter the marriage in good faith, the IJ attached undue weight to issues that frankly have no bearing on the ultimate question. So for example, oh, for example, the IJ was very troubled by my client's supposed inability to recall the number of Russian students who were living in the condo, uh, when she was living with her husband. So the, the, the IJ found that that inconsistency, um, cast doubt on whether the presence of these Russian students in the condo, uh, was actually a factor in the dissolution of the marriage. I would submit that as a complete non sequitur, every witness who testified confirmed that there were Russian students living in the condo and even the petitioner's former husband conceded that they placed a great strain on the marriage. So the exact number who were living there at any one time is just beside the point. Um, and I think even more troubling was the IJ's preoccupation with my client's desire to be gainfully employed while she was here. The IJ faulted my client, uh, because she and her ex-husband apparently disagreed about whether they discussed her desire to work before they got married and because she had a desire to work in the first place. But the fact that a formerly, uh, formerly married couple or even a happily married couple would disagree over whether a conversation took place is hardly surprising. Um, I think more importantly, the IJ's belief that my client's desire to work was somehow incompatible with her desire to establish a life with her former husband is pre it just predicated on outdated notions of a woman's role in the marital relationship. If my client was a man, it is hard to imagine the immigration judge citing her desire to work as evidence that she did not enter the marriage in good faith. Uh, the only way the IJ's logic could be deemed reasonable is if one believes that women do not have an inherent desire to work or that, uh, a husband should be able to prohibit his wife from working. But the question before the IJ was not whether my client was a good wife. It is whether she entered the marriage, uh, in good faith. Um, now finally, uh, with respect to the adverse credibility finding, the court actually does not even need to overturn the adverse, adverse credibility finding to rule in our favor because in our view, there was so much independent evidence uh, confirming the bona fides of the marriage. But if the court reaches the issue, there is ample basis to overturn it. So many of the alleged inconsistencies simply did not exist. So for example, the IJ found my client did yes. This is something I'm a lot of conceptual problems today. So how could it be that if she was lying, when she said I entered this, so we're going to assume the credibility determination, she is not being truthful. And she says, I entered this marriage with an intent that I would stay in it long-term. Um, nevertheless, there's enough evidence to show that she did. Do you know what I'm saying? Yes, I do. If, if, if we're not crediting her testimony, then that means she did not enter it with that very, in a case that turns so much on subjective intent. Once you've established the wrong subjective intent, it's hard for me to see how outside evidence could negate that. Well, the reason is this court has repeatedly held that judges cannot deny or request for relief solely on the basis of an adverse credibility finding. They have to consider independent corroborating evidence. We cite those cases in footnote, one of our reply brief, uh, uh, Karuma and Kamara. So here you have four other witnesses, four other witnesses who confirmed that the marriage was entered into in good faith. So you have to, the adverse credibility finding, you know, the, the, my client's testimony is one factor, but it's far from the only factor to consider in the overall analysis. Uh, I see my time is up unless the court has any further questions. Thank you very much. Thank you.
judges: William B. Traxler Jr., Albert Diaz, Pamela A. Harris